**MISSOURI ALLIANCE FOR RETIRED AMERICANS, et al., Appellants,**

v.

**DEPARTMENT OF LABOR AND INDUSTRIAL RELATIONS, Division of Workers' Compensation, Respondent.**

No. SC 88368.

Supreme Court of Missouri, En Banc.

Feb. 24, 2009.

Alan S. Mandel, Schlueter, Mandel & Mandel, Philip M. Hess, Larsen, Feist & Hess, PC, Sally I. Heller, Fox, Heller, Gallagher & Finley, L.L.P., Mark E. Moreland, Michael Goldberg, Weinhaus, Dobson, Golberg & Moreland, St. Louis, MO, John B. Boyd, Boyd & Kenter, P.C., Joseph W. Moreland, Blake & Uhlig, P.A., Kansas City, MO, Scott A. Wilson, Hines Law Firm, L.L.C., Columbia, MO, Robert S. Peck, Jeffrey R. White, Center for Constitutional Litigation, PC, Washington, DC, for Appellants.

Chris Koster, Atty. Gen., James Layton, Alana M. Barragan-Scott, Office of Mo. Atty. Gen., Jefferson City, MO, for Respondent.

Marc H. Ellinger, Blitz, Bardgett & Deutsch, L.C., Jefferson City, MO, for Amicus Curiae Associated Industries of MO, National Federation Independent Business Legal Foundation and Associated Home Builders and Contractors, Inc.

Paul C. Hetterman, Jeffrey Harnett, Bartley Goffstein, L.L.C., St. Louis, MO, for Amicus Curiae Missouri State Labor Council, AFL–CIO.

Thomas A. Woodley, Douglas L. Steele, Bryan G. Polisuk, Woodley & McGillivary, Washington, DC, for Amicus Curiae International Association of Fire Fighters.

## PLURALITY OPINION

For the reasons set forth below, the Court concludes that the plaintiff labor organizations do not have standing to raise eight of the claims they assert in an attempt to strike down the 2005 amendments to the state workers' compensation law because those claims are not yet ripe for review. Six of these claims argue that specific provisions of the workers' compensation act, as amended in 2005, are unconstitutional because the application of those particular provisions deprives workers of due process, violates the open courts provision of the Missouri constitution or violates several other constitutional rights of the workers.

But, no individual injured person or group of persons are joined in this action, and the claims that these provisions unfairly will deprive any particular person of the person's constitutional rights are, at this point, completely hypothetical. Any opinion this Court would offer, therefore, would be purely advisory, and it is premature to address whether there may be constitutional problems with application of these provisions to particular individuals. *State ex rel. State Bd. of Mediation v. Pigg*, 362 Mo. 798, 244 S.W.2d 75, 79 (1951).

The Court also finds that the claim that the legislature must provide a *quid pro quo* to workers that is at least substantially equivalent to or greater than that provided in the original workers' compensation act is not properly raised or justiciable at this time. Likewise, the claims that the amendments to the act impair workers' constitutional rights and have no rational basis are hypothetical and, hence, not justiciable.

Separate and apart from their constitutional challenges, however, the plaintiff labor organizations *have* presented this Court with a ripe and justiciable issue in their request for a declaratory judgment as to the scope of the exclusivity clause in section 287.120 after the amendments.[1] The amendments narrow the definition of the type of "injury" that falls within the definition of an "accident," which limits the scope of the act. The removal of certain injuries and accidents from the scope of the act places workers who have suffered those injuries outside the workers' compensation system. Those workers now can recover under the common law as they no longer fall within the exclusivity provision of the act as set out in section 287.120.

The Court addresses the constitutional claims, the ripeness issue and the sole justiciable controversy below, after providing a brief factual framework for this analysis.

## I. Factual and Procedural History

In 2005, the legislature made significant changes to the workers' compensation system. Senate Bills Nos. 1 and 130 amended 30 sections of chapter 287, RSMo 2000, the Missouri's workers' compensation law ("amendments"). In response, a consortium of 71 organizations—including 66 labor unions, four labor councils and one

not-for-profit corporation—filed a nine-count petition against the division of workers' compensation in the Cole County circuit court challenging the constitutional validity of the amendments. The labor organizations assert that the primary import of the amendments was to reduce the scope of benefits available to workers injured on the job.

The labor organizations challenge the amended workers' compensation law as a whole in counts I and III, challenge specific statutory provisions in six other counts, and seek a declaratory judgment as to the rights of injured workers whose accidents no longer are within the scope of the act. The parties filed cross-motions for a judgment on the pleadings with respect to counts I and III, the due process challenges to all the amendments. The division also filed for summary judgment on all counts for lack of justiciability. The trial court held that the division was entitled to judgment, as a matter of law, on counts I and III, and granted the division's motion for summary judgment holding that all the other counts, including count IV, were not justiciable. The labor organizations appeal, arguing that the workers' compensation law as a whole is unconstitutional and that all the rest of the claims in their petition are justiciable.

## II. Constitutional Challenges

The constitutional validity of a statute is a question of law, the review of which is *de novo*. *Weinschenk v. State*, 203 S.W.3d 201, 210 (Mo. banc 2006). A statute's validity is presumed, and it will not be declared unconstitutional unless it clearly contravenes a constitutional provision. *Doe v. Phillips*, 194 S.W.3d 833, 841 (Mo. banc 2006).

---

1. All statutory references are to RSMo Supp. 2008 unless otherwise noted.

## A. Nature of Due Process and Open Courts Violation Challenges to the Act as a Whole

The labor organizations challenge the constitutional validity of the act as a whole on the ground that in the original "workers' compensation bargain," workers surrendered the right to sue their employers at common law in exchange for lower but certain compensation, without regard to fault, in all cases of accidental work-related injury. The labor organizations maintain that the reduction of workers' rights in the 2005 amendments is not permitted because it is below the standard set in the initial legislation by the workers and their employers. They allege that the rights then set out were the *quid pro quo* for workers giving up their rights to sue at common law for their claims and, if those rights are diminished in a substantial way, the bargain has been breached. They further assert that the law as a whole, in its current form, contains such substantial modifications of the original bargain that it is no longer a *quid pro quo* and, therefore, violates workers' due process and open courts rights.

Both the Fourteenth Amendment to the United States Constitution and article I, section 10 of the Missouri Constitution provide that no person shall be deprived of life, liberty or property without due process of law. In this case, the labor organizations ask this Court to review the substantive content of the legislation and find that because the amendments substantially affect the bargain that formed the basis of the workers' compensation system, the act unconstitutionally deprives workers of their right to certain compensation for a work-related injury without regard to fault. Alternatively, the labor organizations assert that the amendments violate the workers' due process rights because the amendments are arbitrary and lack a rational relationship to legitimate legislative goals. *See Phillips*, 194 S.W.3d at 844–45.

For the same reasons, the labor organizations argue, the amendments violate procedural due process and the "open courts" provision of the Missouri Constitution, which states: "That the courts of justice shall be open to every person, and certain remedy afforded for every injury to person, property or character, and that right and justice shall be administered without sale, denial or delay." Mo. Const. art I, sec. 14.[2] "Put most simply, article I, section 14 prohibits any law that *arbitrarily or unreasonably* bars individuals or classes of individuals from accessing our courts in order to enforce *recognized* causes of action for personal injury." *Kilmer v. Mun*, 17 S.W.3d 545, 549 (Mo. banc 2000) (internal quotation omitted). The open courts provision does not itself grant substantive rights but, rather, is a procedural safeguard that ensures a person has access to the courts when that person has a legitimate claim recognized by law. *Etling v. Westport Heating & Cooling Serv., Inc.*, 92 S.W.3d 771, 774 (Mo. banc 2003). The analysis employed to determine the constitutional validity of a statute on open courts grounds, then, is the same as the analysis used for procedural due process claims, as article I, section 14 is "a second due process clause to the state constitution." *Goodrum v. Asplundh Tree Expert Co.*, 824 S.W.2d 6, 10 (Mo. banc 1992).

2. An employee's right to certain compensation for work-related injuries, without regard to fault, afforded to employees by the prior statutory scheme is not, in and of itself, a right protected by Missouri's open courts provision. *See DeMay v. Liberty Foundry Co.*, 327 Mo. 495, 37 S.W.2d 640, 645–46 (1931).

The division argues that, while workers who are covered by the workers' compensation act did give up their right to sue at common law in return for their right to recover, regardless of fault or negligence, from the employer, that bargain was not a "take it or leave it" or *quid pro quo* proposition that could not be changed. It points to the fact that Missouri has changed its workers' compensation laws dozens of times over the years, usually making them more favorable to the employee, although sometimes making them more favorable to the employer. The issue, the division argues, is whether the current law passes constitutional muster under a rational basis analysis, not whether the law has changed from what it was in 1926 when the act was first enacted. The division further argues that the changes are not arbitrary and capricious, but have a rational basis, and further that these claims are not ripe for determination at this time because the plaintiff labor organizations have no standing to raise them and because the claims as to specific provisions cannot be resolved except in the context of deciding a specific workers' compensation case involving those provisions.

**B. Justiciability and Ripeness Analysis**

■ The plaintiff labor organizations can sue on behalf of their constituent members if those members could have sued individually. Whether individual members of the unions "would have standing to bring this suit in their own right depends upon whether they are able to satisfy the requirements for bringing a declaratory judgment action." *Missouri Health Care Association v. Attorney General of the State of Missouri*, 953 S.W.2d 617, 620 (Mo. banc 1997).

■ A declaratory judgment action requires a justiciable controversy. *Akin v. Director of Revenue*, 934 S.W.2d 295, 298 (Mo. banc 1996). A case presents a justiciable controversy if: (1) the plaintiff has a legally protectable interest at stake; (2) a substantial controversy exists with genuinely adverse interests; and (3) the controversy is ripe for judicial determination. *See State ex rel. Chilcutt v. Thatch*, 359 Mo. 122, 221 S.W.2d 172, 176 (1949).

*1. Legally Protectable Interest*

■ Proof that the plaintiff has a "legally protectable interest at stake" requires a showing "of a pecuniary or personal interest directly at issue and subject to immediate or prospective consequential relief." *Lane v. Lensmeyer*, 158 S.W.3d 218, 222 (Mo. banc 2005) (internal quotation omitted). There is no litmus test for determining whether a legally protectable interest exists; it is determined on a case-by-case basis. *Mager v. City of St. Louis*, 699 S.W.2d 68, 70 (Mo.App.1985). Here, the plaintiffs allege that they are affected by being required to operate under an act they contend is illegal and unconstitutional and hence is invalid, and under the declaratory judgment act, "any person ... whose rights, status or other legal relations are affected by a statute ... may have determined any question of construction or validity arising under the ... statute ... and obtain a declaration of rights, status or other legal relations thereunder." Section 527.020.

In *Missouri Health*, this Court applied this standard to an organization representing a majority of long-term care facilities bringing a declaratory judgment to have a bill declared invalid under Missouri's constitution. 953 S.W.2d at 620. The organization alleged it had standing because the amendment, which had yet to be enforced, injured its members in that it restrained them from making representations in the course of their business for fear of triggering the disclosure requirements of the

statute. *Id.* This Court held that "[t]he interest in doing business free from the constraints of an unconstitutional law is entitled to legal protection." *Id.*

The holding in *Missouri Health* is consistent with the nature of declaratory relief in that "although accomplished injury is not alleged, where a dispute as to legal rights is otherwise shown, a violation of those rights is not a precondition to the availability of declaratory adjudication." *Higday v. Nickolaus,* 469 S.W.2d 859, 863 (Mo.App.1971). In fact, *Higday* noted that a plaintiff has standing to obtain declaratory relief, and to assert a legally protected interest, unless "it appears that it may be said with certainty that no possible basis exists for [their] contention that they are entitled to a declaration of rights and duties under the facts alleged...." *Id.* at 864.

■ Applying these principles, here, the labor organizations' *quid pro quo* and constitutional arguments about the act as a whole, as well as their argument seeking a determination as to how the act applies to those excluded from receiving benefits under the new amendments, present justiciable controversies as to whether the act, as amended, deprives those now excluded from it from all right to recovery under either the act or the common law, and as to whether it provides an adequate substitute for the common law rights of action that workers have given up. Their arguments about the unfairness of individual provisions and the unfairness of excluding additional workers from coming within the act under the narrowed definition of "accidental injury" also present justiciable controversies. To the extent that the labor organizations ask this Court to hold that specific provisions of the act as amended are unconstitutional because they are so narrow and restrictive that they provide no adequate remedy for an injured worker, they have developed no facts to support these claims, for no individual workers' compensation claims are before this Court. Rather, the attack is a general one, on the effect of the changes as a whole on the act as a whole in a hypothetical sense, without application to any particular injured worker; therefore, there is no justiciable claim as to these provisions at this time.

### 2. Substantial Controversy

■ The second requirement for standing, that a "substantial controversy exists with genuinely adverse interests," clearly is met. A genuine disagreement exists between the parties about the extent of coverage provided under the revised workers' compensation law and whether the revised law violates the workers' substantive due process guarantees by not providing them an adequate substitute remedy for work-related injuries without regard to fault, either individually or as a whole. This disagreement meets the demands of the second requirement as to those claims. *See Levinson v. State,* 104 S.W.3d 409, 412 (Mo. banc 2003); *Blue Cross and Blue Shield of Kansas City, Inc. v. Nixon,* 26 S.W.3d 218, 225 (Mo.App. 2000).

### 3. Ripeness

■ Whether any aspects of the current controversy are ripe for review at the present time presents a more difficult issue. "A ripe controversy exists if the parties' dispute is developed sufficiently to allow the court to make an accurate determination of the facts, to resolve a conflict that is presently existing, and to grant specific relief of a conclusive character." *Missouri Health,* 953 S.W.2d at 621. "In the context of a constitutional challenge to a statute, a ripe controversy generally exists when the state attempts to enforce the statute. In some situations, however, a ripe controversy also may exist before the

statute is enforced." *Id.* The particular circumstance where this Court has allowed a pre-enforcement constitutional challenge to laws occurred "when the facts necessary to adjudicate the underlying claims were fully developed and the laws at issue were affecting the plaintiff in a manner that gave rise to an immediate, concrete dispute." *Id.*, citing *Lincoln Credit Co. v. Peach,* 636 S.W.2d 31, 34 (Mo. banc 1982). *See also Borden Co. v. Thomason,* 353 S.W.2d 735, 741 (Mo. banc 1962); and *Tietjens v. City of St. Louis,* 359 Mo. 439, 222 S.W.2d 70, 72 (1949).

Again, as noted in regard to justiciability, in the absence of individual facts it is impossible to adjudicate the underlying claims that these provisions will be applied unfairly in such as manner as to be unconstitutional. Indeed, nothing in this record shows how they are being interpreted or applied or whether they have been given the draconian meaning ascribed to many of the provisions by the labor organizations. Under this Court's cases, it simply is premature to address the constitutional validity of these provisions individually, in the absence of such facts, for whether any decision in any particular case is a fair one will necessarily depend on the particular circumstance and showing made. Those issues simply are not ripe for review at the present time.

Similarly, absent judicial interpretation of the individual provisions being attacked, this Court cannot compare the effect of those provisions as a whole to the act as a whole as initially enacted as an alleged fixed *quid pro quo* for giving up covered workers' common law claims or the claim that, considered as a whole, it violates the open courts or due process provisions of the constitution. These claims, therefore, are not ripe for review until the meaning of the provisions in question is determined in individual cases.[3]

### III. Request for a Declaratory Judgment as to the Scope of the Exclusivity Clause

The same ripeness objections cannot be made with respect to the labor organizations' request for a declaratory judgment as to the scope of the exclusivity clause. In their petition, the labor organizations assert that, as a result of the amendments' narrowing the definitions of "accident" and "injury" in section 287.020.2 and 287.020.3, a substantial number of employees with work-related injuries are excluded from compensation. They seek a declaratory judgment to address whether the exclusivity provision in section 287.120 bars those workers' ability to pursue negligence tort actions against their employers.

---

**3.** Even were this not the case and a *quid pro quo* analysis were applicable, an issue the Court does not reach, the labor organizations do not actually ask this Court to compare the current version of the act to the initial bargain made in the 1926 act. To the contrary, while they compare some provisions of the current act to those in the original act, they compare other provisions in the current act to various amendments enacted over the years. As the assertion is that the *quid pro quo* pact was agreed to at the time of initial adoption in 1926, a comparison to these later enactments simply does not further the labor organizations' analysis. Neither is it furthered by noting that specific provisions have been changed. Rather, inasmuch as the argument is that the bargain, as a whole, has lost so much of its meaning and benefits to workers that it no longer can serve as a *quid pro quo* for giving up common law rights, a proper determination by this Court as to whether the amendments continue to provide an adequate substitute remedy requires consideration of both the increased and decreased benefits and coverage since adoption of the workmen's compensation law, an analysis that the labor organizations have not undertaken in this case.

No factual development is necessary to address this legal question, which requires only that the Court review the changes in the scope of the act's exclusivity provisions as applied to "injuries" resulting from an "accident." Accordingly, the bar to ripeness that is applicable to the other claims raised by the labor organizations does not apply to this issue.

The definitions for "accident" and "injury" are utilized in the exclusivity clause and amendment of those definitions impacts the scope of the workers' compensation laws. By limiting those definitions, the scope of the act is limited. Any removal of certain injuries and accidents from the scope of the act also places the workers who have suffered those injuries outside the workers' compensation system, and they are no longer governed by the act.

This is evident from a simple reading of the statute itself. Section 287.120 sets out the exclusivity provisions of the act in relevant part as follows:

1. Every employer subject to the provisions of this chapter shall be liable, irrespective of negligence, to furnish compensation under the provisions of this chapter for personal injury or death of the employee by accident arising out of and in the course of the employee's employment, and shall be released from all other liability therefore whatsoever, whether to the employee or any other person. . . .

2. The rights and remedies herein granted to an employee shall exclude all other rights and remedies of the employee . . . at common law or otherwise, *on account of such accidental injury or death*, except such rights and remedies as are not provided for by this chapter.

Section 287.120 (emphasis added). This section makes the act the exclusive remedy for the employee only on account of "such accidental injury or death." *Id.* In other words, it is the exclusive remedy only for those "injuries" that come within the definition of the term "accident" under the act. As section 287.120.2 itself states, other such rights and remedies that are not provided for in the act are not subject to these exclusivity provisions—that is, they still can be sued for at common law.

What, then, is the definition of "accident" under the act as amended? An accident is defined by section 287.020.2 as follows:

2. The word "accident" as used in this chapter shall mean an unexpected traumatic event or unusual strain identifiable by time and place of occurrence and producing at the time objective symptoms of an injury caused by a specific event during a single work shift. . . .

Section 287.020.2.

Read together, this means that if an "injury" comes within the definition of the term "accident" as defined in section 287.020.2, then it is included within the exclusivity provisions of the act, and recovery can be had, if at all, only under the terms set out in the act. If the "injury" is one that is not included within the term "accident" as defined in the act, however, then under section 287.120.1 an employer shall not be liable to the employee under the act and the injury, therefore, is not subject to the exclusivity provisions of the act, as section 287.120.2 makes quite clear in stating "the rights and remedies herein granted to an employee shall exclude all other rights and remedies" only "on account of such accidental injury or death," and that it does not apply to "rights and remedies as are not provided for by this chapter."

Workers excluded from the act by the narrower definition of "accidental injury" have a right to bring suit under the common law, just as they could and did prior to the initial adoption of the act. This Court is not asked to decide what injuries fall within the definition of "accident" in section 287.020.2 and, therefore, no opinion is expressed. The question of whether certain employees have remedies under the current workers' compensation laws or under common law will have to be decided on a case-by-case basis depending on individual facts. There is no such specific case in front of the Court in this proceeding.

For the reasons noted above, the plaintiff labor organizations' other claims about specific exclusions from coverage under the act and the constitutionality of those provisions is premature.

Accordingly, the trial court's judgment on the pleadings with respect to counts I and III is reversed, as those claims are not ripe. The trial court's summary judgment based on lack of justiciability is reversed with respect to count VI, and this Court enters declaratory judgment pursuant to section 512.160(3). It therefore is adjudged, decreed and declared that workers excluded from the act by the narrower definitions of "accident" and "injury" have a right to bring suit under the common law, just as they could and did prior to the initial adoption of the act, because they no longer fall within the exclusivity provision of the act as set out in section 287.120. In all other respects, the judgment of the trial court is affirmed.

We apologize to the parties for the delay in announcing the decision in this appeal and recognize our collective responsibility to ensure that our cases are decided promptly. While there are reasons for the delay, there is no justification for it.

STITH, C.J., RUSSELL and BRECKENRIDGE, JJ., concur; WOLFF, J., concurs in separate opinion filed; PRICE and RUSSELL, JJ., concur in opinion of WOLFF, J.; TEITELMAN, J., dissents in separate opinion filed.

FISCHER, J., not participating.

MICHAEL A. WOLFF, Judge, concurring.

I agree with the plurality opinion's conclusions that most of this lawsuit is nonjusticiable. The claims strike me as hypothetical, not real, because of the absence of a real claimant with a real injury who claims his or her rights and remedies have been impaired unconstitutionally by the 2005 legislation.

The one claim on which this Court grants relief—for declaratory judgment—strikes me as about as hypothetical as the rest of the claims. A declaratory judgment action, like any lawsuit regardless of the relief sought, requires a real controversy between real parties where the facts and law can be adjudicated and a final judgment rendered. U.S. Const. art. III, § 2; *State ex rel. State Bd. of Mediation v. Pigg*, 362 Mo. 798, 244 S.W.2d 75, 79 (1951).[1] An advisory opinion—which

1. *State ex rel. State Bd. of Mediation v. Pigg* explains the case or controversy requirement under Missouri law: "It is well settled that constitutional questions will not be determined, unless their determination is essential to a proper determination of the case presented. We have no authority to give advisory opinions on constitutional questions affecting, or which may affect, the rights of persons who are not parties to the action. Until such persons are in court and the issues are directly presented and necessarily involved such issues will not be decided." 362 Mo. 798, 244 S.W.2d 75, 79 (internal citations omitted). *See also City of Springfield v. Sprint Spectrum*, 203 S.W.3d 177 (Mo. banc 2006);

courts wisely avoid—seeks advice about situations that may not have occurred yet.[2]

The declaratory judgment the Court enters in this case seems inarguable as an abstract principle of law. As I understand it, the declaratory judgment is: if a worker is injured and the worker is precluded from recovery under the workers' compensation law, the injured worker can pursue a tort remedy in court.[3]

Just how and whether that declaration of law applies in any given case depends on the facts of the case presented. When there is such a case, we may find out. In the meantime, in the present appeal, we have done no damage to the law.[4]

RICHARD B. TEITELMAN, Judge, dissenting.

The "very essence of civil liberty ... consists in the right of every individual to claim the protection of the laws, whenever he receives an injury." *Marbury v. Madison*, 1 Cranch 137, 5 U.S. 137, 163, 2 L.Ed. 60 (1803). For a large number of Missouri

workers, this foundational legal principle no longer applies, as the legislature has eliminated or substantially curtailed any right to compensation for workplace injuries. Therefore, I respectfully dissent.

The plurality opinion holds that nearly all of the appellants' constitutional challenges are not ripe for review because there has been no judicial interpretation of the individual provisions being challenged. Yet, as the plurality opinion recognizes, this Court has permitted business organizations to obtain a pre-enforcement declaration that a statute is unconstitutional because of "[t]he interest in doing business free from the constraints of an unconstitutional law...." *Missouri Health Care Association v. Attorney General of the State of Missouri*, 953 S.W.2d 617, 620 (Mo. banc 1997). The appellants in this case, workers and labor organizations, have a similar interest in working free from the constraints of an unconstitutional law. The statutory amendments at issue, without exception, are aimed specifically and expressly at reducing both the availability

*Muskrat v. United States*, 219 U.S. 346, 31 S.Ct. 250, 55 L.Ed. 246 (1911). *See also,* Robert J. Pushaw, Jr., *Why the Supreme Court Never Gets Any "Dear John" Letters: Advisory Opinions in Historical Perspective*, 87 G EO. L.J. 473 (1998) (reviewing STEWART JAY, MOST HUMBLE SERVANTS: THE ADVISORY ROLE OF EARLY JUDGES (1997)).

2. Appellate courts, like circuit courts, lack authority to issue advisory opinions on matters of law that are not part of a live case or controversy. *Riverside–Quindaro Bend Levee Dist., Platte County, Missouri v. Missouri American Water Co.,* 117 S.W.3d 140, 153 (Mo.App.2003); *State ex rel. Mathewson v. Board of Election Com'rs of St. Louis County,* 841 S.W.2d 633, 635 (Mo. banc 1992). *See also* Mo. Const. art. V, § 3 (appellate jurisdiction to hear "cases") and § 14 (circuit court jurisdiction over *all cases and matters, civil and criminal* ). While the Missouri Constitution speaks of "cases *and matters*," there never has been any indication that the additional words would authorize anything other

than a true case or controversy between parties with real interests in the outcome.

3. Or, put another way: if a person's injury occurs on the job, the claimant cannot sue the employer if a remedy is available in the workers' compensation law. *State ex rel. MW Builders, Inc. v. Midkiff,* 222 S.W.3d 267, 270 (Mo. banc 2007) (explaining that "the Workers' Compensation Law supplants the common law in determining remedies for on-the-job injuries.").

4. I join the plurality opinion's apology for the delay in this case. This Court has a long-standing tradition of deciding its cases promptly. I believe the current case is an aberration. I am hopeful that such delay will not occur again. *See generally,* STANDARDS FOR APPELLATE COURTS, "Time Standards for Judicial Functions," Sec. 355 (American Bar Assn.1994) (The ABA standards are not binding but do express generally accepted norms for the conduct of appellate courts.).

and amount of compensation afforded to injured workers. This is revealed by the plain language of the statutes, independent of the particular facts of any case. No judicial interpretation is required. By declining to address the issues presented, this Court leaves Missourians subject to the still unresolved question of whether their workplace injuries will be compensated in a manner that is even remotely commensurate with the constitutional guarantee to a "certain remedy" for personal injury. This Court should answer the questions presented by this appeal.

The division of workers' compensation's position is that article I, section 14 is purely procedural and provides no substantive limitation on the legislature's authority to alter or abolish common law remedies. This assertion is contrary to the open courts provision of article I, section 14, which states:

> "That the courts of justice shall be open to every person, and certain remedy afforded for every injury to person, property or character, and that right and justice shall be administered without sale, denial or delay."

For purposes of this case, the operative phrase is that there shall be "certain remedy afforded for every injury to person. . . ." This language limits governmental authority to arbitrarily or unreasonably bar individuals or classes of individuals from accessing the courts in order to enforce recognized causes of action for personal injury. *Kilmer v. Mun,* 17 S.W.3d 545, 549 (Mo. banc 2000). There is no doubt that the open courts provision leaves the legislature free to alter or abolish any statutory or common law cause of action. *Id.* at 550. The authority to abolish a common law cause of action, however, does not necessarily entail the unfettered authority also to abolish all remedies for personal injury. The open courts provision specifically guarantees the right to "certain remedy" for personal injury. If the legislature is free to abolish all remedies for personal injury, then the right to a "certain remedy" for personal injury is not a right at all but, instead, is relegated to the status of a privilege that exists only by virtue of legislative whim.[1]

In addition to the plain language of the open courts provision, the very nature of article I, section 14 provides strong evidence of a substantive component. The open courts provision is essentially a "second due process clause to the state constitution." *Goodrum v. Asplundh Tree Expert Co.,* 824 S.W.2d 6, 10 (Mo. banc 1992); *see also Blaske v. Smith & Entzeroth,* 821 S.W.2d 822, 834 (Mo. banc 1991); *Findley v. City of Kansas City,* 782 S.W.2d 393, 397–98 (Mo. banc 1990). The due process clause has both a procedural and substantive component. *Doe v. Phillips* 194 S.W.3d 833, 842 (Mo. banc 2006). Under a due process analysis, "[n]o one would contend that a law of a State, forbidding all redress by actions at law for injuries to property, would be upheld in the courts of

---

1. To date, the cases addressing the Missouri open courts provision have largely dealt with procedural bars to obtaining a recognized remedy. *See e.g., State ex rel. Cardinal Glennon Memorial Hosp. for Children v. Gaertner,* 583 S.W.2d 107 (Mo. banc 1979) (requirement that a medical malpractice plaintiff submit his or her claim to a professional liability board before filing suit violated open courts provision); *Strahler v. St. Luke's Hosp.,* 706 S.W.2d 7 (Mo. banc 1986) (two-year statute of limitations on medical malpractice lawsuits by minors violated the open courts provisions by cutting off the claim before the minor was able to bring suit on his or her own behalf). Although Missouri courts have applied the open courts provision only to procedural bars, the fact remains that there is nothing in the text of the open courts provision that necessarily forecloses a substantive component.

the United States, for that would be to deprive one of his property without due process of law." *Poindexter v. Greenhow,* 114 U.S. 270, 303, 5 S.Ct. 903, 29 L.Ed. 185 (1885). If the state cannot deny redress for injuries to property, then surely it cannot deny redress for personal injuries without violating the specific due process guarantee of a "certain remedy" for "every injury to person."

The existence of a substantive component is confirmed by the case law from other states with constitutional provisions similar to Missouri's open courts provision. At least 39 state constitutions have a similar open courts provision. David Schuman, *The Right to a Remedy,* 65 Temp. L.Rev. 1197, 1201 (1992). Almost all of these states "apparently recognize the doctrine of a substitute remedy, or quid pro quo, to justify legislative change." Thomas R. Phillips, *The Right to a Constitutional Remedy,* 78 N.Y.U. L.Rev. 1309, 1335 (2003). The requirement of an adequate substitute remedy recognizes that a meaningful state constitutional guarantee of a remedy for personal injury must include a substantive guarantee of an adequate legal remedy for personal injury.[2]

Consistent with the specific due process guarantee in Missouri's open courts provision and the well-reasoned decisions from other states, I would hold that article I, section 14 requires the provision of an adequate substitute remedy when the legislature abrogates a common law cause of action for personal injury. Adopting this rule would leave the legislature free to abolish a common law cause of action for personal injury in favor of a statutory enactment that reflects current policy concerns, while preserving the state constitutional right to some form of adequate remedy for personal injury.

Having established that Missouri open courts provision requires an adequate substitute remedy, the next question is whether the amendments at issue in this case so restrict compensation for workplace injuries that they violate article I, section 14. The workers' compensation law long has been described as a "bargain" in which the employer forfeits common law defenses and assumes automatic liability. In return, the employee forfeits the right to a potentially higher common law judgment in return for assured compensation. *Zueck v. Oppenheimer Gateway Properties, Inc.,* 809 S.W.2d 384, 388 (Mo. banc

---

2. See *Gluba v. Bitzan & Ohren Masonry,* 735 N.W.2d 713 (Minn.2007)("the legislature could take many steps to reduce employers' costs, but if these steps resulted in the denial of benefits to a sufficiently large proportion of workers ... the workers' compensation scheme no longer would represent a reasonable trade off of workers' common law rights"); *Judd v. Drezga,* 103 P.3d 135, 139 (Utah 2004) (the constitutional right to a remedy is satisfied "if the law provides and injured person an effective and reasonable alternative remedy"); *Mello v. Big Y Foods, Inc.,* 265 Conn. 21, 826 A.2d 1117, 1124 (2003) ("It is settled law that [the open courts provision] restricts the power of the legislature to abolish a legal right existing at common law ... without also establishing a reasonable alternative to the enforcement of that right ..."); *Smothers v. Gresham Transfer,* *Inc.,* 332 Or. 83, 23 P.3d 333, 356 (2001) ("the legislature may abolish a common law cause of action so long as it provides a substitute remedial process in the event of injury to the absolute right the remedy clause protects"); *Injured Workers of Kansas v. Franklin,* 262 Kan. 840, 942 P.2d 591, 620 (1997) (upholding workers' compensation amendments restricted notice provisions and reduced compensation for shoulder injuries, but stating that "[t]he legislature once having established a substitute remedy, cannot emasculate the remedy, by amendments, to a point where it is no longer a viable and sufficient substitute remedy"); *Texas Workers' Compensation Commission v. Garcia,* 893 S.W.2d 504, 521 (Tex. 1995) (upholding amendments, but noting that additional restrictions could render benefits "so inadequate as to run afoul of the open courts doctrine.").

1991); 1B Arthur Larson & Lex K. Larson, LARSON'S WORKERS' COMPENSATION LAW, section 1.04 (2004). The essentials of the workers' compensation bargain, therefore, are (1) the certainty of "a sure and speedy means of compensation for injuries suffered in the course of employment" and, (2) the availability of compensation irrespective of fault. *St. Lawrence v. Trans World Airlines*, 8 S.W.3d 143, 149 (Mo. App.1999).

The 2005 amendments to the workers' compensation law mark a significant shift in the bargain. Unlike the amendments upheld in other states, the amendments at issue in this case are comprehensive and substantially will reduce the availability of compensation for every injured worker while completely excluding large classes of workers from any remedy at all.[3] The plain language of the 2005 amendments reveals that every single amendment disadvantages injured workers and, in various ways, makes it more difficult to obtain compensation, limits compensation or in some circumstances completely eliminates any opportunity for compensation.

One of the most significant amendments redefines the term "accident." Previously, an "accident" was defined as an "unforeseen identifiable event or series of events ... producing at the time objective symptoms of an injury." Section 287.020.2, RSMo 2000. This definition of the term "accident" included injuries that occurred due to repeated exposure to an injury inducing factor. The amended statute limits the definition of "accident" by requiring proof of "an unexpected traumatic event or unusual strain identifiable by time and place of occurrence" and producing objective symptoms of an injury "caused by a

specific event during a single work shift." Section 287.020.2, RSMo Supp.2005. The net result of this amendment is that an "accident" no longer includes injuries caused by the cumulative impact of repetitive exposure to some factor that causes a workplace injury. This restrictive definition would apply even if such exposure was a result of the employer's negligence. This is substantial restriction on the availability of workers' compensation benefits.

Another significant amendment increases the standard of proof for obtaining compensation. Under the former statute, a work-related injury was compensable if the employee could demonstrate that the accident or exposure was a "substantial factor" in producing the injury. Section 287.020.3, RSMo 2000. The 2005 amendments increase the causation standard by requiring the employee to show that the accident was the "prevailing factor." Section 287.030.3(1), RSMo Supp.2005. This burden not only is higher than the prior standard, but it also is more stringent than the standard of proximate cause in a common law tort case. In a common law tort action, a plaintiff can establish "proximate cause" by proving that the negligent act was "one of the efficient causes [of the injury], without which injury would not have resulted." *Martin v. Mo. Highway & Transp. Dep't*, 981 S.W.2d 577, 584 (Mo. App.1998). Consequently, a plaintiff can obtain recovery even if the alleged negligence was one of several causes that, when considered independently, would not constitute a prevailing factor. By increasing the causation requirement to a level beyond that which was formerly imposed by the workers' compensation law and that also exceeds the common law, the legisla-

---

**3.** The amendments upheld in other states were much less restrictive and were held to constitute an adequate substitute remedy. *See e.g., Garcia, supra* (calculation of disability benefits); *Injured Workers, supra,* (shortened notice periods, reduction in benefits for shoulder injuries).

ture has erected a substantial practical barrier to the availability of compensation for workplace injuries.[4]

The 2005 amendments further restrict the availability of a remedy by providing that "[a]n injury resulting directly or indirectly from idiopathic causes is not compensable." Section 287.020.3(3), RSMo Supp.2005. An "idiopathic" cause is one that is unique to an individual. Previously, compensation was available for such injuries provided that workplace conditions were a contributing factor. *Alexander v. D.L. Sitton Motor Lines*, 851 S.W.2d 525, 527 (Mo. banc 1993). Moreover, in a common law tort action, there is no defense for idiopathic conditions. The complete exclusion of any compensation for an injury that even is caused "indirectly" caused by an idiopathic condition will preclude recovery for large numbers of individuals who, under the former workers' compensation statute or in a common law tort action, would be entitled to recovery.

Another substantial limitation on the availability of compensation is the new requirement that "objective medical findings shall prevail over subjective findings." Section 287.190.6(2), RSMo Supp.2005. Objective medical findings are, of course, valuable. However, for those medically recognized injuries, such as soft tissue injuries that result in subjective symptoms of pain or dysfunction, the medical diagnosis may rest on a physician's subjective determination without "objective" medical findings. This amendment mandates a biased assessment of the evidence and, in some cases, will amount to a preemptive determination of whether the employee has met his or her burden of proof. Neither the previous workers' compensation law nor the common law provides such a restriction on administrative or jury fact-finding.

The 2005 amendments also inject fault into the previously no-fault workers' compensation scheme. Section 287.120.6(1), RSMo Supp.2005 mandates a 50 percent reduction in benefits if the injury was sustained "in conjunction with the use of alcohol or nonprescribed controlled drugs. . . ." Under the prior version of this statute, the employee forfeited 15 percent of his or her benefit and this forfeiture was conditioned upon the employer actually informing the employee of the applicable workplace policies. The legislature and employers both have a valid interest in preventing the use of alcohol and drugs in the workplace. However, under the plain language of the amended statute provision, an employee would automatically forfeit 50 percent of his or her compensation even if the drug or alcohol use was not the cause of the injury. Additionally, an accident resulting in injury could occur "in conjunction with" drug or alcohol use even if the injured worker had not consumed any alcohol or drugs. This amendment introduces a concept of fault and attendant benefit reductions that are substantially more restrictive than the previous statute or the common law.

Another example of fault based restrictions on compensation is reflected in section 287.170.4, RSMo Supp.2005. This statute provides that "[i]f the employee is terminated from post-injury employment based upon the employee's post-injury misconduct, neither temporary total disability nor temporary partial disability benefits under this section or section 287.180 are payable." This statute punish-

---

4. This amendment is similar to the "major contributing cause" requirement that was found to violate the Oregon open courts provision if the employee was not provided a common law cause of action. *Smothers v. Gresham Transfer, Inc.*, 332 Or. 83, 23 P.3d 333, 362 (2001).

es an employee for post-injury misconduct that, by virtue of being post-injury, could not have been a factor in causing the injury. The statute does not even require that the employer's decision to terminate the injured employee is reasonable or non-pretextual. There is nothing in the previous workers' compensation statute or any principle of common law that would deny otherwise available compensation based on post-injury misconduct that has no causal relationship to the injury that necessitated compensation in the first place.

The 2005 amendments raise the employees' burden or proof, limit the availability of evidence to prove a workplace injury and inject fault into what is purported to be a no-fault system. When the cumulative impact of the 2005 amendments is considered, it is apparent that the result is a fundamental alteration of the equities of the workers' compensation bargain which effectively bars injured workers from realizing the constitutional guarantee of a "certain remedy ... for every injury to person, property, or character...." Although the plurality opinion correctly holds that those workers now excluded from workers' compensation benefits by the narrower definitions of "accident" and "injury" have a right to pursue a common law cause of action, this is little consolation for those workers still subject to the amended version of the act. If an injury occurs, their right to a certain remedy for personal injury is in jeopardy. Consequently, I would address the issues presented by this appeal and hold that the 2005 amendments violate article I, section 14 of the Missouri Constitution.[5]

---

5. I concur in Judge Wolff's concerns regarding the delay in deciding this case.