

# In the Missouri Court of Appeals
# Eastern District

### DIVISION FOUR

ORTHOPEDIC AMBULATORY SURGERY )   No. ED110859
CENTER OF CHESTERFIELD, LLC, AND )
CHESTERFIELD SPINE CENTER, LLC, )
  )
    Appellants, )   Appeal from the Circuit Court of
  )   St. Louis County
vs. )   20SL-AC19914
  )
SHARPE HOLDINGS, INC., EMPLOYERS )   Honorable Mondonna L. Ghasedi
INSURANCE CO., OF WAUSAU, PILOT )
TRAVEL CENTERS, LLC, LIBERTY MUTUAL )
INSURANCE CO., NORANDA ALUMINUM, )
INC., NEW HAMPSHIRE INSURANCE CO., )
CASCADES HOLDINGS US INC., ZURICH )
AMERICAN INSURANCE CO., CIC GROUP, )
INC., ARCH INSURANCE CO., CITY OF )
WEBSTER GROVES, ST. LOUIS AREA )
INSURANCE TRUST, N & R OF FULTON, INC., )
MISSOURI NURSING HOME INSURANCE )
TRUST, CITY OF FERGUSON, MISSOURI, )
ST. LOUIS AREA INSURANCE TRUST, )
UNILEVER MANUFACTURING (US) INC., )
THE INSURANCE CO. OF THE STATE OF )
PENNSYLVANIA, FISERV SOLUTIONS, INC., )
NEW HAMPSHIRE INSURANCE CO., )
SEDGWICK CLAIMS MANAGEMENT )
SERVICES, INC., TRUMBULL INSURANCE )
CO., LIBERTY UTILITIES SERVICE CORP., )
ZURICH AMERICAN INSURANCE CO., ERB )
EQUIPMENT CO., INC., OLD REPUBLIC )
INSURANCE CO., EMPLOYBRIDGE )
MIDWEST3, INC., XL SPECIALTY )
INSURANCE CO., CITY OF UNIVERSITY )
CITY, MISSOURI, ST. LOUIS AREA )
INSURANCE TRUST, THE DUFRESNE )
SPENCER GROUP, LLC, AND )
AMERICAN ZURICH INSURANCE CO., )
  )
    Respondents. )   Filed: July 25, 2023

Kelly C. Broniec, C.J., Philip M. Hess, J., and James M. Dowd, J.

**Introduction**

This case concerns health care providers (HCPs) that rendered medical care pursuant to the Missouri Workers' Compensation Act, section 287.010 et seq., to injured workers at the request of employers and the employers' workers' compensation insurance companies. The issue before us is whether those HCPs, after receiving partial payment for that medical care from the employers, may pursue through common law claims in the circuit court those employers and insurance companies for the remaining balance of those charges or whether their recourse is exclusively limited to the procedures and remedies available under the Act.

Appellants Orthopedic Ambulatory Surgery Center of Chesterfield, LLC, and Chesterfield Spine Center, LLC, filed suit in the Circuit Court of St. Louis County against numerous employers and their workers' compensation insurers (Respondents[1]) for the payment of medical charges arising from the treatment Appellants provided pursuant to the Act to Respondents' injured workers. Appellants' underlying civil causes of action sound in breach of contract, action on account, unjust enrichment, quantum meruit, promissory estoppel, and negligent misrepresentation.

Respondents sought summary judgment[2] on their affirmative defenses (1) that under section 287.120, the Division of Workers' Compensation (or the Labor and Industrial Relations Commission) has the exclusive authority over disputes relating to charges incurred for medical

---

[1] Consistent with section 287.030.2 ("Any reference to the employer shall also include his or her insurer or group self-insurer."), we use "Respondents" throughout this opinion to refer to both the Respondent employers and the Respondent workers compensation insurers.
[2] Due to the common questions of law and fact, the trial court consolidated Respondents' motions for summary judgment pursuant to Rule 66.0l(b). Likewise, we have consolidated here on appeal Appellants' six notices of appeal which relate to the various summary judgment motions that were filed and which raised substantially similar grounds.

care or other services provided pursuant to the Act; (2) that section 287.140 and its associated state regulation establish the exclusive remedy available to Appellants in connection with such disputes; and (3) that Appellants' claims are barred by the doctrines of collateral estoppel or res judicata. The trial court granted Respondents' motions for summary judgment on the "affirmative defense that the procedures established by the Act and its associated regulations provide an exclusive remedy before the Division for resolving disputes involving medical fees and charges in Workers' Compensation cases…"

Now on appeal, Appellants claim the trial court erred (1) because section 287.120.1's exclusivity provision does not apply to claims brought by health care providers against employers regarding unpaid bills, but is limited to employers' liability to employees for all claims arising from an "accident,"[3] and (2) the legislature did not clearly express or intend that section 287.140 and its related regulation were to be the exclusive remedy available to HCPs in medical fee disputes or to preempt HCPs' common law claims for the payment of medical fees.

Our holding with respect to Point II — that Appellants' claims are barred under section 287.120.1, section 287.140.3, section 287.140.4, and 8 C.S.R. 50-2.030 — is dispositive. Therefore, we need not address Point I.

**Standard of Review**

Our review of the grant of summary judgment is *de novo. Lisle v. Meyer Elec. Co.*, 667 S.W.3d 100, 103 (Mo. banc 2023). "Summary judgment will be affirmed when the moving party has established a right to judgment as a matter of law on the basis of facts as to which there is no

---

[3] "Accident" is defined in section 287.020.2 as "an unexpected traumatic event or unusual strain identifiable by time and place of occurrence and producing at the time objective symptoms of an injury caused by a specific event during a single work shift." Section 287.020.3 limits injuries covered by the Act to those that arise out of and in the course of employment.

genuine dispute." *Holmes v. Steelman*, 624 S.W.3d 144, 148 (Mo. banc 2021) (internal quotation omitted). A defending party may establish a right to judgment as a matter of law by showing:

> (1) [F]acts that negate any one of the claimant's elements facts, (2) that the non-movant, after an adequate period of discovery, has not been able to produce, and will not be able to produce, evidence sufficient to allow the trier of fact to find the existence of any one of the claimant's elements, or (3) that there is no genuine dispute as to the existence of each of the facts necessary to support the movant's properly-pleaded affirmative defense.

*ITT Com. Fin. Corp. v. Mid-Am. Marine Supply Corp.*, 854 S.W.2d 371, 381 (Mo. banc 1993) (emphasis omitted). In determining whether a party has established a right to judgment, issues of "statutory interpretation are questions of law reviewed *de novo*." *Holmes*, 624 S.W.3d at 149.

**Discussion**

Point II

This point presents us with the legal exercise of statutory interpretation as to whether section 287.120.1, section 287.140.3, section 287.140.4, and 8 C.S.R. 50-2.030 of the Workers' Compensation Act provide Appellants the exclusive procedures and remedies for their claims for unpaid medical bills relating to treatment provided pursuant to the Act. We find that they do and therefore affirm the summary judgments entered by the trial court.

The facts here are undisputed. After providing medical treatment pursuant to the Act to Respondents' injured employees, Appellants sought reimbursement from Respondents for the unpaid portions of those medical charges. In all but two of the cases consolidated before us, Appellants filed with the Division "applications for payment of additional reimbursement of

4

medical fees."[4] Such applications are prescribed by state regulation 8 C.S.R. 50-2.030(1)(B) as the regulatory pleading available to HCPs to pursue claims for unpaid medical bills. The Division ruled Appellants' applications untimely and either dismissed them with prejudice or simply denied them. Instead of appealing those decisions to the Labor and Industrial Relations Commission, as contemplated by 8 C.S.R. 50-2.030(L), Appellants filed suit in the circuit court.

The primary rule of statutory construction is to ascertain the intent of the legislature from the language used and to give effect to that intent if possible. *Lisle,* 667 S.W.3d at 104. The language of a statute is given its plain and ordinary meaning. *Id.* (citing *Spradlin v. City of Fulton*, 982 S.W.2d 255, 258 (Mo. banc 1998)). Language is clear and unambiguous if plain and clear to one of ordinary intelligence. *Id.* (citing *Wolff Shoe Co. v. Dir. of Revenue*, 762 S.W.2d 29, 31 (Mo. banc 1988)).

"As a creature of statute, an administrative agency's authority is limited to that given it by the legislature." *Farrow v. Saint Francis Med. Ctr.*, 407 S.W.3d 579, 588 (Mo. banc 2013) (quoting *State ex rel. Missouri Public Defender Com'n v. Waters*, 370 S.W.3d 592, 598 (Mo. banc 2012)). "The rules of a state administrative agency duly promulgated pursuant to properly delegated authority have the force and effect of law and are binding upon the agency adopting them." *State ex rel. Martin-Erb v. Missouri Com'n on Human Rights*, 77 S.W.3d 600, 607 (Mo. banc 2002).

Our review of the language of these applicable statutory sections and the related state regulation, giving them their plain and ordinary meaning, leads us to conclude that the legislature

---

[4] In the two cases where applications were not filed (20SL-CC04590 and 21SL-AC02142), it is undisputed that those claims were outside the one-year limitations period established in section 287.140.4 at the time the petitions were filed in circuit court. Nevertheless, in light of our disposition here, this disparate fact is not relevant.

intended that all disputes regarding the payment of medical fees, such as those brought by Appellants below, and the procedures governing those disputes are within the exclusive authority of the Division or the Commission.

Simply put, we cannot ignore the legislature's unequivocally mandatory language here through its repeated use of the word "shall" in section 287.140. *Lisle,* 667 S.W.3d at 104; *Wolf v. Midwest Nephrology Consultants, PC*, 487 S.W.3d 78, 83 (Mo. App. W.D. 2016). Section 287.140.3 begins by mandating that provider's "fees and charges under this chapter *shall* be fair and reasonable" and "*shall* be subject to regulation by the division." Next, the provider "*shall* not charge a fee … greater than the usual and customary fee…" The "division or the commission … *shall* also have jurisdiction to hear and determine all disputes as to such charges" and the "provider is bound by the determination upon the reasonableness of health care bills." (Emphasis added.)

In this regard, the legislature's intent is manifest that this specific type of dispute regarding medical bills for treatment provided "under this chapter" is to be decided by the Division or the Commission. It is noteworthy that the legislature has also defined the legal standards governing such disputes — whether the bills are "fair and reasonable" and "usual and customary."

The next subpart, section 287.140.4, reinforces the legislature's intent, in our judgment, to provide a comprehensive framework for such disputes by mandating that the Division promulgate a regulation to "establish methods to resolve disputes concerning the reasonableness of medical charges…" The legislature employs "shall" once again in mandating that "[t]he regulation *shall* govern resolution of disputes between employers and medical providers over fees charged, whether or not paid, and *shall* be in lieu of any other administrative procedure

6

under this chapter." (Emphasis added.)  Finally, the legislature imposes a one-year limitations period in section 287.140.4(2) for a provider to file its "application for payment of additional reimbursement."

For its part, the Division complied with the legislature's mandate and enacted 8 C.S.R. 50-2.030, a lengthy and, again, comprehensive set of procedures "available to employers, insurance carriers and health care providers to resolve disputes concerning charges for health care services…"  This regulation is remarkable for its detail and comprehensiveness.  Moreover, it provides HCPs, like the Appellants here, the tools to pursue the full payment for the treatment it has provided to injured employees when the employers, like Respondents here, fail to pay the full amount of the bills.  8 C.S.R. 50-2.030(1)(A).  In fact, this regulation allows the provider to make its case that its "medical charges are fair and reasonable and are not greater than the usual and customary fee as provided in section 287.140.3," and to do so before the Division in a hearing conducted by an administrative law judge, then to the Commission through an application for review, and then to this Court on appeal of the Commission's decision.  8 C.S.R. 50-2.030(1)(H)(1)(C); 8 C.S.R. 50-2.030(1)(H)(8).

In the face of this compelling language, Appellants assert that the legislature did not preempt their common law claims but merely provided an alternative to the common law and that providers may choose *either* course of action.  Appellants argue that the section 287.140 framework merely provides a remedy that is concurrent to the pre-existing common law claims available to HCPs like the claims Appellants asserted here, e.g., breach of contract and action on account.  We are unpersuaded.

7

### A. Preemption

We first address Appellants' preemption argument. "'Where the legislature intends to preempt a common law claim, it must do so clearly.'" *Alcorn v. Union Pac. R.R. Co.*, 50 S.W.3d 226, 235 (Mo. banc 2001) (quoting *Overcast v. Billings Mut. Ins. Co.*, 11 S.W.3d 62, 69 (Mo. banc 2000)). "The rule emerging from our prior decisions is that a statutory right of action shall not be deemed to supersede and displace remedies otherwise available at common law in the absence of language to that effect unless the statutory remedy fully comprehends and envelopes the remedies provided by common law." *State ex rel. Church & Dwight Co. v. Collins*, 543 S.W.3d 22, 27 (Mo. banc 2018) (internal quotation omitted). "But statutes displacing common law remedies are to be strictly construed, and if the question is close, the balance should be struck in favor of retaining the common law remedy." *Overcast*, 11 S.W.3d at 69 (internal citations omitted).

We acknowledge the caution the foregoing principles demand of us when considering the preemption of common law claims. Nevertheless, we do not consider this to be one of the "close" questions as far as whether a statutory scheme has fully and comprehensively enveloped the remedies under the common law.

Understandably, Appellants seek to portray the business relationship between HCPs and workers' compensation employers in this context as nothing more than private arm's-length transactions governed by the common law. But that is not the nature of this arrangement. In the typical private sector medical treatment arrangement, the injured person seeks medical care directly from an HCP and the HCP obtains payment directly from the patient and/or from the patient's insurance company and the HCP would have the right to pursue the patient for unpaid

8

portions of the charges in the circuit court under theories similar to those Appellants have asserted here.

But in the world of workers' compensation, the relationships are legally altered. The employer is statutorily required to provide and pay for medical care for the injured worker and the employer gets to select the HCP. Section 287.140.1. It is a three-way relationship. So, when HCPs provide medical treatment under the Act, they enter a comprehensive statutory scheme under which the HCPs acquire certain rights and assume certain responsibilities and limitations beyond the common law. Most of these provisions are contained in section 287.140 alongside the medical bills dispute provisions of sections 287.140.3 and 287.140.4 at issue here and provide additional context and support for our decision. *See Anderson ex rel. Anderson v. Ken Kauffman & Sons Excavating, L.L.C.*, 248 S.W.3d 101, 107 (Mo. App. W.D. 2008) ("[s]tatutes relating to the same subject matter are *in pari materia* and should be construed harmoniously").

So, in terms of the duties and limitations imposed by the Act, section 287.140.1 imposes on HCPs the affirmative duty to communicate fully with the employee regarding the injury and care and that the failure to do "shall constitute a disciplinary violation" subjecting the HCP to the provisions of chapter 620.[5] Section 287.140.11 imposes on HCPs the duty to disclose any financial interest they may have in any facility or institution to which the HCP refers an injured worker for treatment or testing and the failure to do so is deemed a class A misdemeanor. Section 287.140.13(1) and (2) prohibits HCPs from trying to collect payment from the employee or to report the employee for any non-payment to credit reporting agencies and section 287.140.13(4) grants the employee "a cause of action against [the HCP] for actual damages

---

[5] Through various amendments, the provisions of Chapter 620 relating to the registration and licensure of HCPs have been transferred to Chapters 324 and 334.

9

sustained plus up to one thousand dollars in additional damages, costs and reasonable attorney's fees."

We note the significance of the juxtaposition of section 287.140.13(4)'s grant of a civil cause of action to the employee with section 287.140.13(5), in which the legislature declines to grant HCPs a cause of action for the failure of employers to pay their bills. Instead, the legislature directs that HCPs "may proceed pursuant to subsection 4 of this section with a dispute against the employer or insurer for any fees or other charges for services provided." And yet, the legislature clarifies that while HCPs are to proceed pursuant to section 287.140.4 with medical fee disputes against *employers*, HCPs may pursue *employees* civilly for unpaid medical fees under section 287.140.13(3), if the "injury is found to be noncompensable" under the Act.

We glean at least two critical lessons from the foregoing. First, section 287.140 is comprehensive and envelopes the HCPs rights and responsibilities under the Act. Second, the legislature when drafting section 287.140 was keenly cognizant of which claims were to remain viable civilly and which were to be enveloped by the Act.

Finally, while our decision rests primarily on section 287.140, the exclusivity provision of section 287.120.1 — that "every employer … shall be released from all other liability whatsoever, whether to the employee or *any other person*" (emphasis added) — buttresses our holding and leaves little room for doubt in our judgment. *Shaw v. Scott* 49 S.W.3d 720, 730 (Mo. App. W.D. 2001).

## B. The primary jurisdiction doctrine.

We find additional support for our decision under the primary jurisdiction doctrine whereby "courts will not decide a controversy involving a question within the [authority] of an administrative tribunal until after that tribunal has rendered its decision: (1) where administrative

10

knowledge and expertise are demanded; (2) to determine technical, intricate fact questions; (3) where uniformity is important to the regulatory scheme." *Killian v. J & J Installers, Inc.*, 802 S.W.2d 158, 160 (Mo. banc 1991).

This doctrine has been relied upon in the analogous context of section 287.120.1's exclusivity provision to limit Missouri courts' ability to adjudicate civilly matters that have been legislatively entrusted to the Division. *Ducoulombier v. Ford Motor Co.*, 621 S.W.3d 523, 530 (Mo. App. W.D. 2021) (citing *Missouri Alliance v. Dept. of Labor*, 277 S.W.3d 670 (Mo. banc 2009)). In *Ducoulombier,* the court held that under the primary jurisdiction doctrine, the circuit court did not have the authority to determine whether the claimant's injuries and death arose out of and in the course of the employment or from another source. 621 S.W.3d at 533 (citing *Killian*, 802 S.W.2d at 160). Moreover, a party does not have an "undefeatable right to have [her] claim determined in circuit court just because [she] chose to file it there in the first instance, without regard to whether ... [her] claim is otherwise one that Missouri statutes commit to determination by the Commission." *McCracken v. Wal-Mart Stores East, LP*, 298 S.W.3d 473, 478 (Mo. banc 2009)

We see no reason that the primary jurisdiction doctrine should not apply to this case. As stated, the legislature has unequivocally charged the Division and Commission with the authority and tools to adjudicate in the first instance medical fee disputes like those here. The Division is well-versed in medical matters and statutorily charged with determining whether bills are fair and reasonable and usual and customary. Allowing parallel litigation on these issues runs contrary to the uniformity sought by this regulatory scheme. *Killian*, 802 S.W.2d at 160–61.

Moreover, the HCPs may appeal those adjudications to this Court just as parties may appeal the application of section 287.120.1's exclusivity provision and the myriad other issues assigned to the Division and Commission under the Act.

### Conclusion

For the foregoing reasons, we affirm.

_____
James M. Dowd, Judge

Kelly C. Broniec, C.J., and
Philip M. Hess, J. concur.