MISSOURI BANKERS ASSOCIATION
and Century Bank of the Ozarks,
Appellants,

v.

DIRECTOR OF the MISSOURI DIVI-
SION OF CREDIT UNIONS, The
Credit Union Commission of the State
of Missouri, Springfield Telephone
Employees Credit Union, and Mis-
souri Credit Union System, Inc., Re-
spondents.

No. SC 85170.

Supreme Court of Missouri,
En Banc.

Dec. 9, 2003.

Rehearing Denied Jan. 27, 2004.

John S. Pletz, Jefferson City, for appellants.

Jeremiah W. (Jay) Nixon, Atty. Gen., James R. Layton, State Solicitor, Christie A. Kincannon, Jefferson City, Michael J. Wambolt, Kansas City, Asst. Attorneys Gen., James B. Deutsch, Thomas W. Rynard, Jefferson City, for respondents.

G. Alex Bartlett, Jefferson City, Amicus Curiae (The American Bankers Association).

Kurt P. Valentine, Jefferson City, Amicus Curiae (National Association of State Credit Union Supervisors).

Eric L. Richard, Washington, D.C., Amicus Curiae (Credit Union National Association of Washington, D.C.).

STEPHEN N. LIMBAUGH, JR., Judge.

Missouri Bankers Association (MBA) and Century Bank of the Ozarks (Century) appeal the judgment of the circuit court, which dismissed their appeal of a decision of the Credit Union Commission (Commission) to allow Springfield Telephone Employees Credit Union (STECU) to expand its field of membership. The basis of the dismissal was that MBA and Century, as mere economic competitors, lacked standing to contest the Commission's decision. After appeal to the Court of Appeals, Western District, this Court granted transfer. Mo. CONST. art. V, sec. 10. The judgment is reversed, and the case is remanded.

## I.

MBA is a not-for-profit organization established to represent the interests of its members, consisting of 385 commercial banks and savings banks located throughout the state of Missouri. Century Bank is an MBA member bank conducting business in part of the geographic area in Southwest Missouri covered by the 417 area code.

STECU, like all credit unions, is a not-for-profit financial cooperative owned by members who share a common occupation, association or employer. It is organized to accept shares and deposits from its members and to make loans to its members, with the goal of awarding higher interest on deposits and charging lower rates and fees on loans. STECU's membership derives from a "selected employee group" in the Springfield area.

On July 18, 2000, STECU filed an application, pursuant to section 370.081.4, RSMo,[1] with the Missouri Director of Credit Unions (Director) for approval of its proposal to expand its field of membership to the entire 417 area code and part of the 573 area code. The application was based on 4 CSR 105–3.010(1), a regulation promulgated by the Commission in 1999 that defines section 370.080.2(2)'s geographic limitation on credit unions—"a well-defined local neighborhood, community or rural district"—to include, *inter alia*, a telephone area code. Because the Director determined that the expansion may exceed the statutory membership limit of 3,000 people, he referred the matter to the Commission, as required under section 370.081.2, RSMo, for approval of an exemption.[2] The Commission then granted the exemption, and the matter was referred back to the Director who, following the procedure set out in section 370.081.4,[3] granted the application for expansion with respect to the 417 area code, but denied the application with respect to portions of the 573 area code.

Subsequently, MBA and Century petitioned the Commission for administrative review of the Director's decision. The Commission held a hearing and determined, at the outset, that MBA and Century both had standing under section 370.081.5 for review of the Director's decision. MBA and Century then presented evidence that STECU's expansion into the entire 417 area code constituted unfair competition and that Century and the 88 MBA member banks in the 417 area code would be negatively impacted. The Commission ruled, however, that the Director's decision was not erroneous because STECU's proposed expansion was in accordance with Missouri law, and the Director did not abuse his discretion in granting the proposal.

On September 14, 2001, Century and MBA filed a multi-count petition in the Circuit Court of Cole County seeking: 1)

---

1. All Missouri statutory references are to RSMo 2000 unless otherwise indicated.

2. Section 370.081.2(1) provides that a credit union may have more than 3,000 members if the Commission determines in writing that no other group could establish a new credit union because: "a) [No other group has] sufficient volunteer or other resources to support the efficient and effective operation of a credit union; b) [No other group meets the Commission's] criteria which the commission has deemed important for the likelihood of success in establishing and maintaining a new credit union; c) [No other group would be likely] to operate a safe and sound credit union."

3. Section 370.081.4 provides that a credit union may expand to include new groups or geographic areas upon "approval from the director of the division of credit unions...." The statute further requires that Director shall find in addition to any other requirements required by law or rule: 1) the credit union has the immediate ability to serve the additional group or geographic area; and 2) the proposed additional group or geographic area meets the requirements of section 370.080.2. Section 370.080.2 requires that members of each individual credit union must share: 1) a common occupation, association, employer; or 2) a credit union may include those persons who reside or work in a well-defined local neighborhood, community or rural district as such terms are defined by the commission.

section 370.081.5 review of the Director's decision approving the STECU expansion application; 2) section 536.150 "noncontested case" review of the Commission's decision to grant STECU an exemption; and 3) a declaratory judgment invalidating 4 CSR 105–3.010(1). On September 29, 2002, the circuit court held that MBA and Century lacked standing and entered a judgment dismissing their petition.

## II.

■ On appeal, a preliminary standing issue is whether MBA, which is not itself affected by the Director's decision and the Commission's regulation has "associational standing" to bring the challenge on behalf of its members. An entity has associational standing if: 1) its members would otherwise have standing to bring suit in their own right; 2) the interests it seeks to protect are germane to the organization's purpose; and 3) neither the claim asserted nor the relief requested requires the participation of individual members in the lawsuit. *Missouri Health Care Ass'n v. Attorney General of the State of Missouri*, 953 S.W.2d 617, 620 (Mo. banc 1997).

The first requirement is met because, as will be discussed in part III, Century and the other member banks in the 417 area code all have standing to bring their own claims. The second requirement is met because one of MBA's purposes in representing the interests of its 88 member banks in the 417 area code is to protect those banks from unfair competitive forces. The third requirement is met because the relief requested—the reversal of the Director's decision and invalidation of the Commission's regulation—is prospective only, and no request was made for money damages or some other relief that is specific to individual members. *Home Builders Ass'n v. City of Wildwood*, 32 S.W.3d 612, 615 (Mo.App.2000); *Ferguson Police Officers Ass'n v. City of Ferguson*, 670 S.W.2d 921, 925–26 (Mo.App.1984). For these reasons, MBA has associational standing.

## III.

■ The standing analysis for the first claim in appellants' petition—the Director's decision approving the STECU expansion application—is governed by section 370.081.5, which is a new statute, enacted in 1998, that has not yet been addressed in the cases. The statute provides:

Within fifteen days after the decision [of the director] is published in the Missouri Register, any person or entity claiming to be adversely affected shall have the right to contest the decision by appealing the decision to the credit union commission utilizing the procedure as set out in section 370.063. If the commission finds that the decision or the findings of the director of the division of credit unions was arbitrary and capricious or not based on evidence in the director's possession, the commission shall set aside the findings and decision of the director of the division of credit unions and shall enter its own findings and decision. Any party who is aggrieved by a final decision of the commission entered pursuant to this subsection and who has exhausted all administrative remedies provided by law may appeal the decision to the circuit court of Cole County.

Under the plain meaning of this section, the right to appeal a decision of the Director is afforded to a uniquely broad class of affected parties, that is, to: "any person or entity claiming to be adversely affected." This language is open-ended. It is not restricted to an entity that is adversely affected in an immediate and direct man-

ner, such as a credit union whose application is denied. Therefore, it is applicable, instead, to any person or entity that is adversely affected, directly, indirectly, and to whatever extent, by the denial or even the approval of a credit union application. A person or entity so affected is entitled to become a party to an appeal to the Commission. That party is then "aggrieved by a final decision of the Commission," if the party loses the appeal and continues to be in some way adversely affected by the underlying decision of the Director. The aggrieved or losing party then has standing to appeal the Commission's decision to the circuit court.

■ Although respondents concede that section 370.081.5 controls, they urge this Court to adopt by analogy the case law definition of "aggrieved," as it has been applied to the term "aggrieved" in section 536.100, the statute providing judicial review of "contested cases" under the Missouri Administrative Procedure Act (MAPA). In pertinent part, section 536.100 states that "[a]ny person who has exhausted all administrative remedies provided by law and who was aggrieved by a final decision in a contested case, whether such decision is affirmative or negative in form, shall be entitled to judicial review thereof...." As this Court held in *Hertz Corp. v. State Tax Comm'n*, 528 S.W.2d 952, 954 (Mo. banc 1975), "a party is aggrieved [under section 536.100] when the judgment operates prejudicially and directly upon his personal or property rights or interests and that such must be immediate and not merely a possible remote consequence."

Under this definition, respondents contend that a bank's status as a mere economic competitor is not enough to obtain standing, because a bank has no "right" to be free from competition, and even if there were such a "right," no decision of the Director would ever operate directly to infringe on that right. This contention, however, fails to take into account that the restrictive case law definition for the term "aggrieved" under section 536.100 was formulated in the absence of any clear statutory direction. In contrast, section 370.081.5 directs that a party is "aggrieved" by a final decision merely by being "adversely affected" by the decision. Thus, under the statute, economic competitors, and banks in particular, need only show that they are adversely affected, not that they have a right to be free from competition.

■ Appellants' second claim is a challenge to the Commission's grant of an exemption to the 3000 person membership limit under section 370.081.2, which is a prerequisite to the Director's decision under section 370.081.4 to approve the credit union's expansion application. Appellants predicate standing to contest the exemption determination by characterizing the determination as a "non-contested" case under section 536.150 of the MAPA, which a party can invoke to obtain judicial review of certain administrative agency determinations for which no other provision for judicial review is available. As this Court has held, however, under section 370.081.5, judicial review is indeed available to review the decision of the Director, but, in addition, the scope of that review process implicitly encompasses review of the underlying exemption determination by the Commission on which the Director's decision is necessarily based. In fact, the administrative process is not complete when the Commission grants an exemption but continues until the Director makes a final decision. Under this unique and unusual statutory scheme, the Commission's exemption determination is integrated in and is indeed subsumed by, the ultimate decision of the Director, and, in effect, the

Commission, in hearing an appeal of the Director's decision, must review its own decision to grant the exemption.[4] Accordingly, standing under section 370.081.5 to review the Director's expansion decision includes standing to review the Commission's underlying exemption decision.

■ Finally, appellants contend that they also have standing under section 536.053 to challenge the validity of 4 CSR 105–3.010(1) by a declaratory judgment action. Section 536.053 is another new statute (enacted in 1999) that has not been addressed in the cases, at least as it relates to standing. That section provides:

Any person who is or may be aggrieved by any rule promulgated by a state agency shall have standing to challenge any rule promulgated by a state agency and may bring such action pursuant to the provisions of section 536.050. Such person shall not be required to exhaust any administrative remedy and shall be considered a non-state party.

Like section 370.081.5, section 536.053 is couched in broad and unrestricted terms. Standing is afforded not only to any person "who is aggrieved" by any rule, but also to any person who "may be aggrieved" by any rule.

■ Respondents argue, however, that the "is or may be aggrieved" language of section 536.053 should be interpreted solely in a temporal sense to mean that a person has standing who either is now aggrieved or who may be aggrieved in the future, and that the language does not extend standing in the substantive sense to mere economic competitors. However, this restrictive interpretation would render section 536.053 redundant and meaningless because a companion provision, section 536.050, already affords standing to persons who may be aggrieved in the future by authorizing "the courts of this state to render declaratory judgments respecting the validity of rules, *or threatened application thereof....*" (emphasis added). In this regard, the legislature is presumed not to enact meaningless provisions. *Wollard v. City of Kansas City*, 831 S.W.2d 200, 203 (Mo. banc 1992).

This Court concludes, therefore, that "any person who is or may be aggrieved" must mean something other than simply allowing a party to bring a declaratory judgment action to stop the threatened future application of a rule, because that concept is already clearly set forth in section 536.050. Instead, by using the language "is or may be aggrieved," the legislature has expressed its intent to grant standing to challenge the validity of a rule to any person who is aggrieved to any extent. Thus, as applied to the case at hand, standing to challenge a regulation defining the geographic limitation on credit unions is afforded not only to credit unions, but also to banks, as economic competitors of credit unions.

## IV.

For the foregoing reasons, MBA and Century have standing to contest both the Director's decision approving STECU's expansion application and the Commission's promulgation of 4 CSR 105–3.010(1). The

---

4. Had the Commission denied the request for an exemption, the decision could only be challenged as a noncontested case under section 536.150 because neither section 370.081.5, nor any other provision, would afford judicial review. Section 370.081.5 would not afford judicial review because, once the Commission denied the exemption, the Director would have been foreclosed from taking further action on the expansion application and rendering a decision on which review under section 370.081.5 could be based.

judgment is reversed, and the case is remanded.

All concur.