BUILDING OWNERS AND MANAGERS ASSOCIATION OF METROPOLITAN ST. LOUIS, INC., Respondent,

v.

CITY OF ST. LOUIS, MISSOURI, Appellant.

No. ED 94799.

Missouri Court of Appeals, Eastern District, Division Five.

April 26, 2011.

Carl W. Yates, III, St. Louis, MO, for appellant.

John W. Moticka, Clayton, MO, for respondent.

PATRICIA L. COHEN, Judge.

### Introduction

The City of St. Louis (City) appeals the trial court's grant of summary judgment to Plaintiff Building Owners and Managers Association of Metropolitan St. Louis, Inc. (BOMA). The City contends the trial court erred by: (1) finding that BOMA had standing to bring suit; and (2) invalidating Ordinance # 67423. We affirm.

### Factual and Procedural Background

On February 20, 2007, the City enacted Ordinance # 67423, entitled the Displaced Building Service Workers Protection Ordinance (Ordinance). The purpose of the Ordinance, as set forth in its preamble, is "to protect buildings service workers whose building, service contracts or subcontracts are sold for a minimum of 90 days...." Among other things, the Ordinance requires certain successor employers[1] of building service workers to "retain for a 90–day transition employment period at the affected site or sites those building service employees of the terminated building service contractor and its subcontractors, or other covered employer, employed at the site or sites...." During this 90–day period, the successor employer may not discharge without cause an employee retained pursuant to the Ordinance and, if the successor employer determines that fewer building service employees are required, it must "retain the predecessor building service employees by seniority within job classification" and give preferential hiring treatment to any employees not retained. The Ordinance also requires

the successor employer to obtain from its predecessor a list of the names, addresses, dates of hire, and employment occupation classification of its building service employees.

The Ordinance defines "building service" as "work performed in connection with the care or maintenance of an existing building and includes, but is not limited to, work performed by a watchman, security officer, door staff, building cleaner, maintenance technician, handyman, janitor, elevator operator, window cleaner, building engineer and groundskeeper." A "building service employee" is "any person employed as a building service employee by a covered employer who has been regularly assigned to a building on a full or part-time basis for at least 90 days immediately preceding any transition in employment...." However, the Ordinance's definition of "building service employee" excludes: (1) managerial, supervisory, or confidential employees, but not building engineers; (2) employees earning over $25 per hour; and (3) employees regularly scheduled to work fewer than 6 hours per week at a building.

The Ordinance also limits the buildings to which its provisions apply. "Covered employers" are:

> any person who owns or manages real property, either on its own behalf or for another person, or any person who contracts or subcontracts with an owner or manager of real property within the City of St. Louis for real estate, including, but not limited to, housing cooperatives, condominium associations, building managing agents, and any building service contractor....

---

1. The Ordinance defines "successor employer" as one that has been awarded a building service contract to provide services similar to those provided under a "recently terminated"

service contract, or who has purchased or acquired control of property in which building service employees were employed.

The Ordinance excludes from the definition of "covered employers" the following: (1) residential buildings under 50 units; (2) commercial office, institutional, or retail buildings of less than 70,000 square feet; (3) buildings in which the City or any government entity occupies 50% or more of the rentable square footage; and (4) any building owned or operated by a hospital or hospital affiliate. The penalty for violating the Ordinance is a fine of not more than $500 and/or a term of imprisonment of not more than 90 days.

BOMA is a non-profit corporation that represents and promotes the interests of its members who are engaged in the commercial real estate industry. BOMA's members include owners and managers of residential and commercial buildings in the City, as well as providers of janitorial, security, and other building services to residential and commercial office buildings in the City.

On December 5, 2008, BOMA filed suit against the City seeking a declaratory judgment and injunctive relief.[2] BOMA's five-count petition alleged that the Ordinance: (1) is an unconstitutional exercise of the City's home rule authority; (2) is an invalid special law; (3) violates the privacy rights of BOMA's members' employees; (4) exceeds the City's police power; and (5) is invalid because compliance with the Ordinance's provisions is impossible. The City and BOMA filed cross-motions for summary judgment. On March 22, 2010, the Circuit Court of the City of St. Louis entered summary judgment in favor of BOMA on Counts 1, 2, and 4.[3] The trial court also declared the Ordinance void and enjoined the City from enforcing the Ordinance. The City appeals.

### Standard of Review

We review an entry of summary judgment *de novo*. *ITT Commercial Fin. Corp. v. Mid.-Am. Marine Supply Corp.*, 854 S.W.2d 371, 376 (Mo. banc 1993). Summary judgment is appropriate where the moving party has demonstrated, on the basis of facts as to which there is no genuine dispute, a right to judgment as a matter of law. *Id.*; Mo. Sup. Court Rule 74.04. Here, there is no dispute as to material facts, so we evaluate whether a party is entitled to summary judgment as a matter of law. *See, e.g., Jefferson County Fire Prot. Dists. Ass'n v. Blunt*, 205 S.W.3d 866, 868 (Mo. banc 2006).

### Discussion

#### I. Standing

In its first point on appeal, the City claims the trial court erred in finding that BOMA has standing to bring suit on behalf of its members.[4] An entity has

---

2. Pursuant to federal abstention principles, the United States District Court of the Eastern District of Missouri has stayed a related federal action involving the same parties.

3. The trial court dismissed without prejudice Counts 3 and 5 of BOMA's petition.

4. In its summary judgment order, the trial court also found that BOMA has standing to assert the privacy rights of its members' building service employees. However, the trial court rejected on the merits BOMA's claim that the Ordinance violates a general right of privacy in employment records. BOMA did not cross-appeal but argues in its response brief that BOMA had standing to sue on behalf of third party employees whose privacy rights would be affected by the Ordinance. Generally, in the absence of a cross-appeal, the respondent cannot complain of an adverse ruling by the trial court. *Goldberg v. State Tax Commission*, 618 S.W.2d 635, 642 (Mo. 1981); *see also Whoberry v. Whoberry*, 977 S.W.2d 946, 951 (Mo.App. S.D.1998). We will not consider a contention of error not properly raised. *See Committee on Legislative Research v. Mitchell*, 886 S.W.2d 662, 664–65 (Mo.App. W.D.1994).

associational standing if: 1) its members would otherwise have standing to bring suit in their own right; 2) the interests it seeks to protect are germane to the organization's purpose; and 3) neither the claim asserted nor the relief requested requires the participation of individual members in the lawsuit. *Hunt v. Washington State Apple Advertising Comm'n*, 432 U.S. 333, 342–43, 97 S.Ct. 2434, 53 L.Ed.2d 383 (1977); *Mo. Bankers Ass'n v. Dir. of Mo. Div. of Credit Unions*, 126 S.W.3d 360, 363 (Mo. banc 2003). The City contends that BOMA fails to satisfy the first two parts of the *Hunt* three-part test for associational standing.

a. *Standing of BOMA's individual members to bring lawsuit*

 Whether BOMA's individual members would have standing to bring this suit in their own right depends upon whether they are able to satisfy the requirements for bringing a declaratory judgment action. *Mo. Alliance for Retired Ams. v. Dept. of Labor and Ind. Relations*, 277 S.W.3d 670, 676 (Mo. banc 2009). A declaratory judgment action requires a justiciable controversy. *Id.* A justiciable controversy exists where: 1) the plaintiff has a legally protectable interest at stake; 2) a substantial controversy exists between the parties with genuinely adverse interests; and 3) the controversy is ripe for judicial determination. *Mo. Health Care Ass'n v. Attorney General*, 953 S.W.2d 617, 620 (Mo. banc 1997).

 We consider, in turn, the three requirements for a justiciable controversy and find that each is satisfied in the present case. This case satisfies the first requirement for a justiciable controversy because BOMA's members that own property in the City have a legally protectable interest in doing business free from the constraints of an unlawful ordinance. *See Home Builders Ass'n of Greater St.* *Louis, Inc. v. City of Wildwood*, 32 S.W.3d 612, 614 (Mo.App. E.D.2000).

The City argues, however, that BOMA lacks associational standing because not *all* of BOMA's members have standing to sue in their own right. BOMA's members own and service buildings throughout the greater St. Louis metropolitan area, which includes the City. There is no dispute that BOMA members that own and service buildings in the City are directly affected by the Ordinance's requirements. The City cites and we find no support for its argument that associational standing to sue on behalf of the association's members requires that all members of the association have standing to sue in their own right. Indeed, Missouri courts have found that organizations have associational standing where some, but not all, of their members would have standing to sue in their own right. *See, e.g., Mo. Bankers Ass'n*, 126 S.W.3d at 361, 363 (holding that an association consisting of 385 commercial banks and savings banks located throughout the state of Missouri had associational standing where 88 members were affected by regulation of credit unions in a specific area code); *Home Builders Ass'n*, 32 S.W.3d at 614–15 (holding that an association of home builders in the metropolitan St. Louis area had standing to challenge the City of Wildwood's municipal ordinance).

 This case fulfills the second requirement for justiciable controversy because a substantial controversy exists between parties with genuinely adverse interests. Namely, the parties disagree about the constitutionality of the Ordinance. *See, e.g., id.*; *Retired Ams.*, 277 S.W.3d at 677. Finally, the third requirement for a justiciable controversy is satisfied because this case is ripe for judicial determination. A ripe controversy

is one of sufficient immediacy and reality to warrant the issuance of a declaratory judgment. *Mo. Health Care*, 953 S.W.2d at 621. "A ripe controversy exists if the parties' dispute is developed sufficiently to allow the court to make an accurate determination of the facts, to resolve a conflict that is presently existing, and to grant specific relief of a conclusive character." *Id.*

■■■ The City contends the controversy is not ripe because the City has not enforced the ordinance and BOMA has suffered no harm. However, a ripe controversy may exist before a statute is enforced. *Planned Parenthood of Kansas v. Nixon*, 220 S.W.3d 732, 738 (Mo. banc 2007). The Missouri Supreme Court has held that, "[i]n the context of a constitutional challenge to a statute, a ripe controversy generally exists when the state attempts to enforce the statute. In some situations, however, a ripe controversy also may exist before the statute is enforced." *Retired Ams.*, 277 S.W.3d at 677–78. Here, the Ordinance was duly adopted, the law affects BOMA's members, and BOMA must assume the City will enforce its laws. *See Tietjens v. City of St. Louis*, 359 Mo. 439, 222 S.W.2d 70, 72 (1949). The fact that the City has not enforced the Ordinance against either BOMA or its members does not make this action premature. *See id.*

■■■■ A pre-enforcement constitutional challenge to a law is ripe "when the facts necessary to adjudicate the underlying claims were fully developed and the laws at issue were affecting the plaintiff in a manner that gave rise to an immediate, concrete dispute." *Mo. Health Care*, 953 S.W.2d at 621. "Cases presenting predominantly legal questions are particularly amenable to a conclusive determination in a pre-enforcement context, and generally require less factual development." *Planned Parenthood*, 220 S.W.3d at 739.

BOMA's claims are ripe for review because the facts necessary for adjudication are sufficiently developed as BOMA's claims present largely legal questions that need little factual development. *See id.* at 740. BOMA represents owners and managers of residential and commercial buildings located in the City and providers of services to such buildings, and the Ordinance imposes affirmative duties on such employers. The Ordinance also affects BOMA's members in a manner giving rise to an immediate, concrete dispute because it subjects them to criminal penalties if they violate its provisions.

*b. BOMA's interests in lawsuit are germane to the organization's purpose*

■■■ Having determined that BOMA's members have standing to bring the instant lawsuit in their own right, we turn to the second requirement for associational standing and consider whether the interests BOMA seeks to protect are germane to its organizational purpose. The City argues that BOMA's purposes are "far too remote to allow standing" to challenge the Ordinance. We disagree.

As previously noted, BOMA is a nonprofit corporation that represents and promotes the interests of its members and associate members who are involved in the commercial real estate industry, including owners and managers of residential and commercial buildings located in the City and providers of janitorial, security, and other services to such buildings. BOMA's articles of incorporation describe the organization's purpose as follows:

> To advance by all appropriate means the interest of building ownership as a business enterprise and a leading industry; and, in so doing, raise the standards and enhance the status of building manage-

ment. Specifically, it includes development of acquaintances, friendships and cooperation among its members; discussion of mutual problems and exchange of ideas and experience; performance of useful services; fostering of scientific methods; compilation analysis; publication of data pertinent to buildings; application of economic principles in the betterment of existing buildings and in the planning of new construction; encouragement of good public relations, including employee and tenant relationships; and the dissemination of authentic information.

"The preservation of members' business opportunities and economic well-being may be germane to a trade association's purposes so as to confer such an association with standing to pursue a lawsuit on behalf of its members." *Home Builders Ass'n,* 32 S.W.3d at 615. By imposing upon building owners, managers, and service providers a duty to retain certain building service workers, the Ordinance directly affects the business and financial interests of BOMA members. *See, e.g., Missouri Outdoor Advertising Ass'n, Inc. v. Mo. State Highways & Transport. Comm'n,* 826 S.W.2d 342, 344 (Mo. banc 1992). We find that the interests that BOMA seeks to protect through this litigation, specifically its members' business and financial interests in owning, managing, and servicing commercial and residential buildings, are germane to BOMA's purpose. *See Home Builders Ass'n,* 32 S.W.3d at 615. Be-

cause BOMA meets the three requirements for associational standing, the trial court did not err in finding that BOMA has standing to challenge the constitutionality of the Ordinance on behalf of its members.[5] Point denied.

## II. Constitutionality of the Ordinance

In its second point on appeal, the City claims the trial court erred in invalidating the Ordinance on the grounds that the Ordinance is: (1) an unconstitutional exercise of the City's home rule authority; (2) special legislation prohibited by the Missouri Constitution; and (3) an unconstitutional exercise of the City's police power. Because we conclude that the Ordinance constitutes invalid special legislation, we need not decide whether the City had authority to enact it under its charter or police power.

Article III, section 40(30) of the Missouri Constitution provides that "[t]he general assembly shall not pass any local or special law ... where a general law can be made applicable, and whether a general law could have been made applicable is a judicial question to be judicially determined without regard to any legislative assertion on that subject."[6] Mo. Const. Art III, § 40(30). A general law is a statute that relates to persons or things as a class, whereas a special law relates to particular persons or things of a class. *Bd. of Ed. of the City of St. Louis v. Mo. State Bd. of Ed.,* 271 S.W.3d 1, 9 (Mo. banc 2008). "The basis of sound legislative

---

**5.** Citing *Citizens for Safe Waste Management v. St. Louis County,* the City argues that, as an alternative to using the three-part test for associational standing, a court can find that a corporation lacks standing if fails to demonstrate a legally cognizable interest separate from the interests of its members. 810 S.W.2d 635, 639 (Mo.App. E.D.1991). The City's reliance on *Citizens* is misplaced because, there, the plaintiff association was challenging a zoning ordinance, and the court

expressly declined to apply to zoning cases the three-part test for organizational standing that the United State Supreme Court outlined in *Hunt,* 432 U.S. at 344, 97 S.Ct. 2434. *Id.*

**6.** The constitutional prohibition on special legislation applies to municipal as well as state legislation. *City of Sullivan v. Sites,* 329 S.W.3d 691, 694 (Mo. banc 2010).

classification is similarity of situation or condition with respect to the feature which renders the law appropriate and applicable. A law may not include less than all who are similarly situated." *Wilson v. City of Waynesville*, 615 S.W.2d 640, 644 (Mo.App. S.D.1981). "Thus, the question in every case is whether any appropriate object is excluded to which the law, but for its limitations, would apply." *City of Springfield v. Sprint Spectrum, L.P.*, 203 S.W.3d 177, 184 (Mo. banc 2006) (quotations omitted).

 A facially special law is presumed to be unconstitutional. *Tillis v. City of Branson*, 945 S.W.2d 447, 449 (Mo. banc 1997). A law is facially special if it is based on close-ended characteristics, whereas a law that creates an open-ended classification is not facially special and is presumed to be constitutional. *Jefferson County Fire Prot.*, 205 S.W.3d at 870. To overcome the presumption of unconstitutionality, the party defending a facially special law must demonstrate a "substantial justification" for the special treatment. *Harris v. Mo. Gaming Com'n*, 869 S.W.2d 58, 65 (Mo. banc 1994).

The Ordinance restricts the hiring and firing actions that certain successor employers may take in relation to a special group of building service employees. The Ordinance grants this special class of employees continued employment for at least 90 days following the transfer of building ownership or control or following termination of a building service contract or subcontract, preferential hiring rights in the event of workforce reduction, and mandatory offers of continued employment after 90 days if performance is "satisfactory." The Ordinance also imposes on covered predecessor employers a duty to provide a list of the affected employees' names and contact information to succes-sor employers and any collective bargaining representatives of those employees.

The group of employees protected under the Ordinance performs work "in connection with the care or maintenance of an existing building." However, the Ordinance limits the class of protected employees by excluding, among others, those earning in excess of $25 per hour. The Ordinance further narrows the class of protected employees and affected employers by excluding from its definition of "covered employers" any building owners, managers, contractors, and subcontractors who own, manage, or service residential buildings that contain less than 50 units or commercial buildings that are smaller than 70,000 square feet. In addition to those exclusions based on building size and type, the Ordinance excludes covered employers who own, manage, or service a building in which a governmental entity occupies 50% or more of the rentable square footage or a building owned or operated by a hospital or hospital affiliate.

The Ordinance is facially special because it benefits certain employees in the event of a sale, but does not protect others that are similarly situated. Additionally, the Ordinance exempts from its requirements owners, managers, contractors, and subcontractors of a special class of privately-owned buildings based on the buildings' size, type, use, and tenants. *See, e.g., Harris*, 869 S.W.2d at 65. In other words, the Ordinance targets employers that own, manage, or service some residential and commercial buildings, while excluding employers that own, manage, or service buildings of similar size and type. *See, e.g., id.*; *Wilson*, 615 S.W.2d at 646. Likewise, the Ordinance includes a select class of building service workers to the exclusion of others. The City has failed to identify any distinctive circumstances that would reasonably justify limiting the employment

practices of fewer than all employers who are similarly situated or justify protecting the income of particular employees. *See, e.g., Hagerman v. City of St. Louis*, 365 Mo. 403, 283 S.W.2d 623, 630 (1955).

 Having determined that the Ordinance is facially special, we next consider whether the City satisfied its burden of proving a substantial justification for the special treatment of this limited class of employers. *See City of Sullivan v. Sites*, 329 S.W.3d 691, 694 (Mo. banc 2010). "In order to meet this standard, the mere existence of a rational or reasonable basis for the classification is insufficient." *Sprint Spectrum, L.P.*, 203 S.W.3d at 182.

The Ordinance's preamble states that the purpose of the Ordinance is "to protect building service workers whose buildings, service contracts or subcontracts are sold for a minimum of 90 days at current pay and benefit levels...." In its brief, the City suggests that the Ordinance "ensures the safety of the public during a transitional phase of building ownership or contractual change by having continued employment, at least temporarily, of those most knowledgeable about the building in the event of an emergency of any kind." The City notes that another purpose of the Ordinance is "to protect for a short time the income of" building service employees.

Based on the record before us, we conclude that the City's proffered rationale does not substantially justify restricting the employment practices of a limited class of employers and protecting the employment and income of a special subset of building service workers. For example, it is not clear how protecting the jobs of certain covered building service workers, such as window cleaners, grounds keepers, and elevator operators, promotes the safety and security of building users and occupants. Nor is it clear why, given the Ordinance's stated purpose, it excludes from its protections building service workers who earn more than $25 per hour and those who work in buildings occupied by governmental entities, hospital, or hospital affiliates. Point denied.

### Conclusion

The trial court's entry of summary judgment is affirmed.

GARY M. GAERTNER, JR., P.J., and MARY K. HOFF, J., concur.