

# In the Missouri Court of Appeals
## Eastern District

### DIVISION FIVE

| | | |
|---|---|---|
| CLAYMONT DEVELOPMENT, LLC, | ) | No. ED112720 |
| | ) | |
| Appellant, | ) | Appeal from the Circuit Court |
| | ) | of St. Louis County |
| vs. | ) | |
| | ) | Honorable Kristine A. Kerr |
| CITY OF WILDWOOD, | ) | |
| | ) | |
| Respondent. | ) | FILED: June 24, 2025 |

Claymont Development, LLC ("Claymont") appeals the judgment dismissing its petition challenging the constitutionality of certain ordinances enacted by the City of Wildwood relating to real estate development. We agree with Claymont that the trial court erred in concluding these claims were not ripe for adjudication. The judgment is reversed, and the case is remanded.

### Factual and Procedural Background

We take the allegations in the petition as true for purposes of our review. *See Graves v. Missouri Dep't of Corr., Div. of Prob. & Parole*, 630 S.W.3d 769, 772 (Mo. banc 2021). In 1999, Claymont began "working with" the City of Wildwood to develop homes on a property known as Strecker Forest. In 2007, the City approved a residential development plan. Since that time, Claymont has invested over a million dollars in reliance on the expectation that it could develop Strecker Forest as a residential subdivision. It is prepared to move forward with the development.

In late 2020, the City enacted the Special Circumstances Overlay District ("SCOD") ordinance, creating the SCOD and subjecting land use within it to additional regulations beyond the City's other zoning rules. The SCOD ordinance states that the purpose of the SCOD is to "protect public health and the environment, while allowing appropriate development activities and practices within the SCOD." It also "establishes a protective zoning process that places more focus on the assessment of physical characteristics and public and environmental hazards that may exist on a property through a multiple-step [] review process." The SCOD ordinance provides that "[n]o person shall develop or cause the development of any property, or part thereof, located within the SCOD unless a completed application for such development has been submitted and approved pursuant to the requirements" set forth therein. In 2022, the City enacted another ordinance ("the Strecker Forest ordinance"), which placed Strecker Forest within the SCOD.[1]

Claymont sought a declaratory judgment that the SCOD ordinance is unconstitutional on its face and as applied to Strecker Forest. Claymont also requested damages, alleging that the Strecker Forest ordinance constituted a taking of private property without just compensation in violation of the United States Constitution and an inverse condemnation in violation of the Missouri Constitution. Claymont alleged that the procedures and requirements set out in the SCOD ordinance are "onerous, cost prohibitive, [] subjective and vague" and thereby prevent "any effective use of Strecker Forest as a residential development." According to Claymont, the SCOD ordinance (1) "allows for no uses permitted as of right" with respect to property within the SCOD, (2) conditions all uses on the City's discretionary approval, and (3) "lacks sufficiently definite and specific standards" for what conditional uses might be permitted. It claimed that the SCOD is

---

[1] The ordinances are attached to Claymont's petition, and we consider them part of the allegations therein. *See Smith v. Stewart*, 644 S.W.3d 5, 10 (Mo. App. E.D. 2022); Missouri Supreme Court Rule 55.12 (2024) ("An exhibit to a pleading is a part thereof for all purposes").

2

unreasonable, arbitrary, and capricious on its face. As applied to Strecker Forest, Claymont alleged that the SCOD ordinance "makes residential development infeasible, interferes with Claymont's reasonable investment-backed expectations based on the City's prior approvals for a residential subdivision, and destroys all economically beneficial use of Strecker Forest." While asserting that the ordinances have no public benefit, the petition also asserted that any benefit to the public the ordinances do have is outweighed by the private detriment to Claymont.

The City filed a motion to dismiss the petition, arguing that Claymont's claims were not ripe for adjudication because it had not applied for approval of its Strecker Forest development plans under the ordinances. The trial court agreed and entered judgment dismissing the petition. Claymont appeals.

## Standard of Review

We review the granting of a motion to dismiss *de novo. Graves*, 630 S.W.3d at 772. In doing so, we accept all properly pleaded facts as true, giving the pleadings their broadest intendment and construing all allegations in the plaintiff's favor. *Id.*

## Discussion

The sole issue on appeal is whether Claymont's constitutional challenges to these ordinances are ripe for adjudication even though it has not yet applied for approval of its Strecker Forest development plan pursuant to the ordinances. We conclude that Claymont's claims are indeed ripe.

It is well-settled that a plaintiff may challenge the constitutionality of a law before it has been enforced against the plaintiff. *See Alpert v. State*, 543 S.W.3d 589, 592-93 (Mo. banc 2018). "Parties need not subject themselves to a multiplicity of suits or litigation or await the imposition of penalties under an unconstitutional enactment in order to assert their constitutional claim[.]" *Id.*

3

at 595 (internal quotation marks and citation omitted). Such pre-enforcement constitutional challenges are ripe when "(1) the facts necessary to adjudicate the underlying claims are fully developed and (2) the law at issue affects the plaintiff in a manner that gives rise to an immediate, concrete dispute." *Id.* at 593 (internal quotation marks, brackets, and citation omitted). A case that presents predominantly legal questions with little need for the development of additional facts is particularly amenable to a pre-enforcement determination, as are challenges to laws that have "interrupt[ed] or prevent[ed]" the plaintiff's "previous lawful conduct." *Id.* at 593-94 (collecting cases).

Our jurisprudence is replete with examples of ripe pre-enforcement constitutional challenges to statutes and ordinances. For instance, in *Alpert*, a convicted felon filed a petition challenging a statute criminalizing his possession of firearms. *Id.* at 591. The plaintiff had legally possessed firearms prior to the enactment of the statute and desired to do so again. *Id.* at 593. At the time of his lawsuit, the plaintiff had not violated the statute or been charged or threatened with prosecution. *Id.* at 592. The Supreme Court of Missouri concluded that the plaintiff's constitutional challenge to the statute was ripe even though the statute had not yet been enforced against him. *Id.* at 595. Noting that the plaintiff's previously lawful possession of firearms was interrupted as a result of the statute, the Court found that the issue of whether the statute violated his right to bear arms was a legal question that could be determined based on facts that required no further development—specifically, the plaintiff's status as a convicted felon and his stated desire to possess guns. *Id*. at 593-94.

The Western District has also recognized that a case is ripe when the issue can be resolved on the "*historical* facts" and "no *future* factual developments or events will affect the analysis." *Iseman v. Mo. Dep't of Corr.*, 660 S.W.3d 684, 690 (Mo. App. W.D. 2023). In that case, the

plaintiff, while still incarcerated, sought a declaration about his future obligation under the sex offender registration statute. *Id.* at 689. The court found his pre-enforcement claim to be ripe because the facts necessary to determine whether he would be required to register—namely, the nature of his previous offenses—were "historical," meaning they had already occurred and needed no further development. *Id.* at 690.

Likewise, a plaintiff can bring a pre-enforcement challenge to an ordinance when it directly impacts how the plaintiff does business and the facts needed to resolve the challenge are fully developed. For example, in *Building Owners & Managers Ass'n of Metropolitan St. Louis, Inc. v. City of St. Louis*, 341 S.W.3d 143, 146 (Mo. App. E.D. 2011), the plaintiff challenged an ordinance that the city had not yet enforced against the plaintiff's members. The claims were nevertheless ripe because (1) they presented legal questions that needed little factual development, and (2) the ordinance "impose[d] affirmative duties" on the plaintiff's members giving rise to an immediate and concrete dispute. *Id*. at 149. The ordinance, this Court noted, affected the way the plaintiff's members did business in the city and they could "assume the [c]ity will enforce its laws." *Id*. This Court also held a claim was ripe in *Home Builders Ass'n of Greater St. Louis, Inc. v. City of Wildwood*, 32 S.W.3d 612, 613-15 (Mo. App. E.D. 2000), where the plaintiff challenged an ordinance that imposed certain financial requirements on the development of subdivisions before the city enforced it against the plaintiff or its members. The ordinance, the Court explained, was clearly directed at the plaintiff's members and was designed to regulate the way they engaged in developing subdivisions. *Id*. And there was "no speculation that [the members] are or will be immediately adversely affected by [the city]'s collection of the allegedly improper amounts for subdivision developments." *Id.*; *see also Clifford Hindman Real Est., Inc. v. City of Jennings*, 283 S.W.3d 804, 807 (Mo. App. E.D. 2009) (finding that plaintiff did not have to risk injury to its

business by knowingly violating a rental permit ordinance before seeking a declaration that the ordinance was unconstitutional and constituted a taking without just compensation).

Claymont's challenges to the constitutionality of the SCOD and Strecker Forest ordinances are ripe for adjudication for all the same reasons. First, the Forest Strecker ordinance is clearly directed at how Claymont can use Strecker Forest, and its enactment interrupted Claymont's previously approved plan to develop that property. On their face, the challenged ordinances ban "development of any property, or part thereof, located within the SCOD" without approval under the SCOD ordinance. Thus, in order for Claymont to continue with its development plans in Strecker Forest, it must undergo the additional approval process in the SCOD ordinance. Claymont's petition specifically alleged that the ordinances are already having an adverse effect by making development infeasible, interfering with its "investment-backed expectations," and destroying any economically beneficial use of its property.

Second, the allegations in Claymont's petition present predominantly legal claims: whether the approval process in the SCOD ordinance is unconstitutional on its face and as applied to Strecker Forest and whether the Strecker Forest ordinance constituted a taking without just compensation. Most, if not all, of the facts needed to make these determinations—the text of the ordinances, the history of development plans in Strecker Forest, details about the impact on Claymont's property since the Strecker Forest ordinance was enacted, and Claymont's stated intention to move forward with its development plan—are "historical" and need no further development. *See Iseman*, 660 S.W.3d at 690.

The City insists that the claims are not ripe because additional facts, which have not yet occurred, are needed in order to determine whether Claymont will be prevented from developing Strecker Forest. According to the City, the impact of the challenged ordinances on Claymont is

6

purely speculative unless and until Claymont submits an application to develop Strecker Forest in accordance with the SCOD ordinance. But the City misconstrues the nature of the claims in the petition. Claymont did not assert that it would be unconstitutional to *deny* an application for the development of Strecker Forest; it claimed that *subjecting* its property to that approval process in the first place was unconstitutional and constituted a taking without just compensation. In other words, Claymont did not allege that it will be unable to develop Strecker Forest *in the future*; it alleged that it is *currently* being adversely impacted by ordinances that subject development of that property to an additional approval process. These claims are not dependent in any way on what an application to develop Strecker Forest would contain or whether such an application would be approved or denied.

And contrary to the City's contention, this case is not analogous to *St. Louis County v. City of Sunset Hills*, 727 S.W.2d 412 (Mo. App. E.D. 1987), where the plaintiff claimed that zoning certain property for a particular use was unconstitutional but did not challenge the process by which the property was zoned. Because the plaintiff in that case had not first attempted to have the property rezoned, this Court found that it "ha[d] not shown a legally protectable interest that has been injured . . . and is appropriate or ripe for judicial resolution." *Id.* at 413. Here, on the other hand, Claymont challenged the application process itself—not the potential outcome of that process—and alleged an immediate adverse impact resulting from the fact of being subject to that process. Claymont is not required to engage in the approval process under the SCOD ordinance and await a negative result before challenging its constitutionality in court. *See Alpert*, 543 S.W.3d at 594-95; *Iseman*, 660 S.W.3d at 689; *Home Builders*, 32 S.W.3d at 615.

In sum, the petition contained the requisite factual allegations—not merely conclusions as the City argues—demonstrating that the factual background necessary to adjudicate Claymont's

7

claims is fully developed and that the ordinances affect Claymont in a manner that gives rise to an immediate, concrete dispute. *See Alpert*, 543 S.W.3d at 593. Therefore, the claims in Claymont's petition are ripe, and the trial court erred in dismissing the petition.

## Conclusion

For the foregoing reasons, the judgment is reversed, and the case is remanded.

_____

MICHAEL E. GARDNER, Judge

Thomas C. Clark, II, C.J., concurs.
Elizabeth B. Hogan, Sp.J., concurs.